UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID BUSCHAUER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 20 C 3394 |
| v. | ) ) | Judge Sara L. Ellis |
| COLUMBIA COLLEGE CHICAGO, | ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

In light of the COVID-19 pandemic, in March 2020, Defendant Columbia College Chicago ("Columbia") shifted its classes online and closed its campus for the remainder of the spring 2020 semester. Unhappy with this change and believing that it negatively affected the value of his education, Plaintiff David Buschauer, a Columbia undergraduate student, filed this putative class action on behalf of himself and all Columbia undergraduate and graduate students. Buschauer brings claims for breach of contract or, in the alternative, unjust enrichment, seeking a refund of the tuition and fees he paid for the portion of the spring 2020 semester during which he did not receive on-campus, in-person instruction or access to campus facilities and resources. Columbia has moved to dismiss Buschauer's first amended complaint.[1] Because Buschauer has not sufficiently alleged that Columbia made any specific promise of on-campus, in-person instruction or services, he cannot proceed on his breach of contract claim. And because the parties do not dispute the existence of a contract governing their relationship, Buschauer's unjust enrichment claim fails, even though he has pleaded that claim in the alternative.

---

[1] Among other things, Columbia raised the timeliness of the first amended complaint as a basis for dismissal. The Court thereafter granted Buschauer leave to file the first amended complaint, Doc. 33, mooting this argument.

## BACKGROUND[2]

Columbia, a private, nonprofit college with almost 7,000 students in over sixty undergraduate and graduate programs, offers a curriculum that blends creative and media arts, liberal arts, and business. Given its location in downtown Chicago, Columbia touts its on-campus experience and access to cultural and professional events and opportunities both on and off campus. *See, e.g.*, Doc. 21 ¶ 45 ("Chicago is our laboratory and our playground, and our students explore and sink their teeth into the vast cultural and professional opportunities that abound in this world-class city."); *id.* ¶ 48 ("Explore, collaborate, and take advantage of Columbia's connection to the creative industries in Chicago."). Columbia also promotes its small average class size of eighteen students and its many student organizations that offer students opportunities for "hands-on creative experience[s]." *Id.* ¶ 50. Columbia also markets its student center as "the campus hub for gathering, collaborating, learning and celebrating." *Id.* ¶ 52. Part of its mission includes "giv[ing] educational emphasis to the work of a subject by providing a practical setting, professional facilities, and the example and guide of inventive faculty members who work professionally in the subjects they teach." *Id.* ¶ 34. Columbia encourages freshmen to live in on-campus housing to take advantage of all the opportunities Chicago and Columbia have to offer.

In addition to its traditional programs, in fall 2017, Columbia began offering an online program, Columbia College Chicago Online ("Columbia Online"), which had its own website and course catalog.[3] Columbia Online marketed itself as an entirely online option for "artists

---

[2] The Court takes the facts in the background section from Buschauer's first amended complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving Columbia's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

[3] On May 26, 2020, Columbia announced its intention to wind down Columbia Online, which ceased operations in June 2020.

and entrepreneurs, writers and performers, creators and doers" to allow them to "complete [their] coursework on [their] schedule, without sacrificing the interactive classroom experience." *Id.* ¶ 37. Columbia Online charged reduced tuition and fees for the online classes. Columbia did not allow degree-seeking students to obtain credit toward degree completion or financial aid for Columbia Online courses.

At the start of each semester, students sign a Financial Responsibility Agreement (the "FRA"), in which they "accept full responsibility to pay all tuition, fees, housing charges, meal plan charges, and other associated costs assessed as a result of [their] registration and/or receipt of services." Doc. 21-11 at 2. Under the heading "Changes to Curriculum," students agree "that changes made to the curriculum do not absolve [them] of [their] financial responsibility to pay the correct amount of tuition, fees, and other associated financial obligations assessed as a result of [their] registration and/or services received at" Columbia. *Id.* at 3. Finally, as relevant here, the FRA provides that it "supersedes all prior understandings, representations, negotiations and correspondence between the student and Columbia College Chicago, constitutes the entire Agreement between the parties with respect to the matters described, and shall not be modified or affected by any course of dealing or course of performance." *Id.* at 5.

Once students accept the FRA, they can proceed to select classes for the semester through the MyColumbia online portal. For the spring 2020 semester, Columbia's course catalog provided course descriptions and in places included specific building and room assignments. The course catalog also included a disclaimer that it "is not a contract but rather a guide for the convenience of the students" and that Columbia "reserves the right to change or withdraw courses; to change the fees, rules, and calendar for admission, registration, instruction, and graduation; and to change any of its policies or other provisions listed in the Catalog at any

time." Doc. 21-1 at 6. Columbia's course catalog also indicated that "the usual term of a class is 15 weeks," although "some subjects may be offered in shorter periods, ranging from three to eight weeks." Doc. 21 ¶ 63.

Buschauer, a resident of Lemont, Illinois, decided to attend Columbia as an undergraduate to further his interest in music and art. Buschauer attended Columbia during the 2019-2020 school year and anticipated graduating in May 2021 with a degree in entertainment marketing and music business.[4] For the spring 2020 semester, Buschauer accepted the FRA and registered for classes. Columbia charged him $13,305 in tuition and $613 in mandatory fees. This included a $50 registration fee; $70 health center fee; $150 activity fee to fund student programs, services, clubs, and special events; $153 U-Pass fee that provided full-time students with unlimited CTA rides; $150 technology fee to fund computer labs, software, on-campus internet access, and student technology support; and a $40 instruction resource fee for his Animal Behavior and Marketing Research course, intended to cover course materials and other class-related educational expenses.

Partway through the spring 2020 semester, due to the COVID-19 pandemic, Columbia suspended all on-campus, in-person classroom instruction as well as access to on-campus facilities and services from March 12 to April 6, 2020. It also cancelled all campus events after March 15. On April 6, Columbia resumed classes online, but on-campus facilities and services remained closed. Before the transition to online classes, Buschauer received fifteen hours per week of course instruction. After, he only received four hours per week of instruction, with lecture classes or question and answer sessions changed to PowerPoint presentations and reading assignments. The switch to online classes caused students to incur additional technological

---

[4] Buschauer temporarily dropped out of Columbia on September 19, 2020 due to the continuation of online classes but intends to reenroll once Columbia returns to on-campus, in-person instruction.

expenses. Columbia did not provide students with laptops or money to cover internet access, software programs, and utility expenses that students incurred because of the move to online classes. Buschauer acknowledges that "in closing Columbia's physical campus and changing all instruction to online, Columbia likely took measures it deemed necessary to protect public health." *Id.* ¶ 99.

In addition to the tuition and fees students paid for the spring 2020 semester, Columbia also received $6,341,542 in grant funding from the CARES Act–HEERF, up to 50% of which Columbia could use to cover costs associated with significant changes to the delivery of instruction due to COVID-19. Students organized a petition asking for a reduction in tuition for the spring 2020 semester given the switch to online classes and lack of access to campus. Buschauer also requested a prorated refund of tuition and fees for the spring 2020 semester from Columbia's Central Financial Department on May 22, 2020. But Columbia did not refund or provide any reimbursement for fees and tuition that students paid for the spring 2020 semester, except for a small reimbursement for those who lived in campus housing or purchased a meal plan. Columbia did suggest that students could apply for the Columbia CARES funds if they needed additional assistance. For the fall 2020 semester, Columbia agreed not to implement a planned tuition increase but refused requests to decrease the tuition rates. Columbia reasoned that it had fixed costs "regardless of instructional mode" and was committed to "delivering all expected learning outcomes for courses and credit towards graduation" regardless of whether offered in-person, online, or in a hybrid manner. *Id.* ¶ 95.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I.   **Educational Malpractice**

Columbia initially argues that the Court should dismiss the first amended complaint because Buschauer raises only noncognizable claims of educational malpractice by challenging the quality of the instruction he received after Columbia moved to online courses. "[I]f a claim raises questions about the reasonableness of an educator's conduct in providing education services, or if a claim requires an analysis of the quality of education, then it is a noncognizable claim for educational malpractice." *Waugh v. Morgan Stanley & Co.*, 2012 IL App (1st) 102653, ¶ 47. To avoid the bar on educational malpractice claims, "the essence of the plaintiff's complaint" must be "not that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all." *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992). "Ruling on this issue would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment of whether the institution made a good faith effort to perform on its promise." *Id.*

Buschauer specifically states in the first amended complaint that he does not contend that Columbia committed educational malpractice by "fail[ing] to adequately perform a promised educational service for 15 weeks of Spring 2020 Semester." Doc. 21 ¶¶ 22–23. Instead, Buschauer frames his claims as ones for Columbia's failure to provide *any* on-campus, in-person instruction and access to facilities, resources, and services for the better half of the spring 2020 semester as allegedly promised. Despite Buschauer's framing, the first amended complaint includes allegations that one could read to claim that the online instruction Buschauer received "was not good enough," *Ross*, 957 F.2d at 417, thus requiring an inquiry into the quality of the education he received for the spring 2020 semester. *See, e.g.*, Doc. 21 ¶ 79 ("Columbia began to offer a poor substitute for the educational experience it was obligated to provide and began offering online classes."); *id.* ¶ 82 (noting the "inferior nature of online classes" and that "[i]n-person instruction and online classes are not equal learning experiences"); *id.* ¶ 100 (requesting a refund of a percentage of tuition to reflect that the "online learning experience . . . is objectively worth less" than what Buschauer paid).

Some courts have concluded that similar allegations turn students' claims concerning the failure to receive in-person instruction due to the COVID-19 pandemic into ones for educational malpractice. *See, e.g.*, *Gociman v. Loyola Univ. of Chicago*, --- F. Supp. 3d ----, 2021 WL 243573, at *3 (N.D. Ill. Jan. 25, 2021) (finding the complaint "clearly challenges the quality of the online instruction, not whether defendant provided education 'at all'" where the students acknowledged receiving online instruction and credits but argued that that instruction was "worth less" than in-person instruction). But the Court agrees with those courts that have addressed similar tuition refund cases in the wake of COVID-19 that, at least at this stage, Buschauer's claims do not require the Court to consider the quality of the online instruction he received but

rather whether Columbia failed to provide Buschauer with the on-campus, in-person instruction and services it allegedly promised. *See Oyoque v. DePaul Univ.*, No. 20 C 3431, 2021 WL 679231, at *2 (N.D. Ill. Feb. 21, 2021) ("Though portions of the plaintiffs' allegations *can* be read as talking about the value of online instruction, at its core the complaint's focus is breach of contract—whether DePaul provided the specific services it allegedly promised. To the extent the plaintiffs discuss the difference in value between in-person and online education, that discussion is limited to alleging damages from the defendant's alleged breach of contract, not an allegation that any decreased value *constitutes* the breach of contract.").

To the extent that it becomes clear at a later stage that Buschauer's claims or damages request would require an evaluation of the comparative value of the remote and in-person instruction he received, the Court may reassess its conclusion. *See Hassan v. Fordham Univ.*, --- F. Supp. 3d ----, 2021 WL 293255, at *4 (S.D.N.Y. Jan. 28, 2021) ("To the extent that adjudicating Plaintiff's claims entails evaluation of whether a course conducted remotely was less valuable than one conducted in person—and if so, by how much—the Court should decline to 'enter the classroom and determine whether or not the judgments and conduct of professional educators were deficient.'" (citation omitted)). At this stage, however, the Court cannot conclude that Buschauer has alleged noncognizable claims of educational malpractice and so proceeds to address Columbia's remaining arguments for dismissal.

## II. Breach of Contract

Under Illinois law, a breach of contract claim consists of four elements: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) injury to the plaintiff. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199 (1999). The legal relationship between a student and school is contractual, with the terms of the contract "generally set forth in

the school's catalogs and manuals." *DiPerna v. Chicago Sch. of Pro. Psych.*, 893 F.3d 1001, 1006–07 (7th Cir. 2018) (quoting *Raethz v. Aurora Univ.*, 346 Ill. App. 3d 728, 732 (2004)). In the educational setting, Buschauer cannot "merely state that . . . an implied contract existed," *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009), but instead "must point to an identifiable contractual promise that the defendant failed to honor," *Ross*, 957 F.2d at 416–17.

Buschauer alleges that he "specifically contracted with Columbia for courses that would be delivered 100% on-campus and in-person, in addition to contracting for a full 15-week Spring 2020 Semester worth of access to on-campus facilities, resources, events, and services," as set forth in "Columbia's catalogs, circulars, bulletins, and regulations, in addition to industry standards and customary dealings between students and universities." Doc. 21 ¶¶ 42–43. Columbia argues that despite these allegations, Buschauer has not identified any specific promise Columbia made to provide on-campus, in-person instruction and services. Initially, Buschauer responds that his general allegations that the course catalog and other publications included these promises suffice and objects to the imposition of any heightened pleading standard. But, as the Seventh Circuit has noted in the educational setting, an argument "that the exact details of the contract will become clear during discovery runs counter to the holding of *Twombly*, which dictates that the complaint itself must contain sufficient factual detail to describe the parameters of the contract before discovery may commence." *Bissessur*, 581 F.3d at 603. In other words, in the student-university context, "the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trs. of the Univ. of Ill.*, 741 F.3d 769, 773 (7th Cir. 2013).

9

Here, none of the bases Buschauer sets forth support finding that Columbia made specific promises of on-campus, in-person instruction and services for the spring 2020 semester. First, the FRA does not include any reference to on-campus, in-person instruction and services and instead specifically provides that "changes made to the curriculum do not absolve [students] of [their] financial responsibility to pay the correct amount of tuition, fees, and other associated financial obligations assessed."[5] Doc. 21-11 at 3. Columbia's marketing materials also do not create any promises concerning on-campus, in-person instruction and services because they do not mention the location of courses or the mode of instruction. *See Oyoque*, 2021 WL 679231, at *5 ("[M]arketing materials 'are not among the terms of the contract between universities and their students.'" (quoting *Galligan v. Adtalem Glob. Educ.*, No. 17 C 6310, 2019 WL 423356, at *6 (N.D. Ill. Feb. 4, 2019)). While these materials advertise Columbia's prime location in downtown Chicago, describing ways that its location can benefit students, such references amount to "unenforceable expectations" or aspirational statements, not "concrete promises." *Id.*

Next, although Buschauer generally cites to Columbia's course catalog and other academic policies in support of his contention that Columbia promised to provide on-campus, in-person instruction, he fails to point to any specific provision on that point. The fact that some course descriptions may have included specific building and room numbers does not guarantee on-campus, in-person instruction, particularly given the course catalog's disclaimers and reservation of rights. *See Gociman*, 2021 WL 243573, at *4 (course catalog parentheticals about lectures happening in person were "hardly sufficient to form a binding contract," particularly where disclaimers made "Plaintiffs' attempt to read into the catalogue an obligation to provide

---

[5] Columbia argues that the FRA precludes any claim seeking a tuition refund because it states that it "constitutes the entire Agreement between the parties with respect to the matters described, and shall not be modified or affected by any course of dealing or course of performance." Doc. 21-11 at 5. Because the Court cannot conclude at this stage that the FRA exclusively governs Buschauer's contract claim, the Court does not further address the parties' arguments concerning the FRA.

only in-person instruction . . . plainly inconsistent with the document itself"); *Hassan*, 2021 WL 293255, at *6 ("The course catalog contains informational guidance regarding, for example, a course's instructor, location, and schedule. But there are no express statements promising that these aspects of a course were not subject to change. Nor has Plaintiff identified any statement in which Fordham 'relinquished its authority' to alter the modality of its course instruction."). And while the course catalog does indicate that the "usual term of a class is 15 weeks," this promises nothing about the instruction occurring on-campus and in-person. Doc. 21 ¶ 63.

Similarly, the Court cannot find that Buschauer has sufficiently alleged that his payment of the activity, health center, instruction resource, registration, technology, or U-Pass fees entitled him to on-campus, in-person services. Buschauer's references to the student handbook and other materials describing the student center, health center, or information technology department merely provide information about what facilities and services Columbia provides students, not any specific promises of access to these facilities and services in-person at all times. *See Oyoque*, 2021 WL 679231, at *4 (university's statements about availability of resources and amenities were "informative rather than promissory"). And while Buschauer may not have needed to use his U-Pass given the closure of Columbia's campus and facilities, the U-Pass itself does not guarantee access to Columbia facilities but rather only provides Buschauer with the ability to use public transportation in Chicago throughout the semester for a set fee.

Buschauer also seeks to find a promise of on-campus, in-person instruction and services in customary industry standards. But Buschauer provides no allegations to allow the inference that Columbia adopted these alleged industry standards in making specific promises to him about his education. *See Charleston*, 741 F.3d at 773 (a student must identify "the exact promises the university made to the student"). Finally, although Buschauer does not raise this basis in his

11

response to the motion to dismiss, the first amended complaint alleges that Columbia's offering of online courses that cost less than his tuition implies a promise to provide on-campus, in-person instruction. But, as Buschauer recognizes, Columbia Online offered an "entirely different experience and set of services," Doc. 21 ¶ 29, and so he cannot use this difference in tuition rates to imply a specific promise for on-campus, in-person instruction for those enrolled in Columbia's undergraduate program. *See Gociman*, 2021 WL 243573, at *4 (rejecting argument that difference in tuition for in-person and online programs "reflects a guaranteed right to on-campus services and 'face-to-face, live instruction'"). Because none of Buschauer's allegations support a specific promise that Columbia made to provide on-campus, in-person instruction and services, the Court must dismiss his breach of contract claim.[6]

### III.    Unjust Enrichment

To state an unjust enrichment claim, Buschauer must allege that Columbia has "unjustly retained a benefit to [Buschauer's] detriment, and that [Columbia's] retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs. v. Mt. Vernon Hosp.*, 131 Ill. 2d 145, 160 (1989). Although the existence of a contract "does not automatically bar an unjust enrichment claim," *Muehlbauer v. GMC*, 431 F. Supp. 2d 847, 855–56 (N.D. Ill. 2006), a quasi-contractual claim cannot survive when an express contract governs the parties' relationship of the parties, *id.* at 855; *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 497 (1992) ("Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" (citation omitted)).

---

[6] Because the Court dismisses Buschauer's claim for lack of an identifiable promise, the Court need not address Columbia's other arguments for dismissal.

Here, Buschauer pleads his unjust enrichment claim in the alternative, omitting his allegations concerning the existence of a contract. *See Ford v. Pacific Webworks, Inc.*, No. 09 C 7867, 2011 WL 529265, at *4 n. 7 (N.D. Ill. Feb. 4, 2011) ("[B]reach of contract and unjust enrichment may be pleaded in the alternative as long as plaintiffs have not incorporated allegations of a contract into their unjust enrichment claim."). But this does not necessarily save Buschauer's claim; "a plaintiff may not acknowledge throughout her complaint that there is an express contract, but then allege that if the defendant did not breach the contract, then it owes damages for unjustly enriching itself." *Miszczyszyn v. JPMorgan Chase Bank, N.A.*, No. 18-cv-3633, 2019 WL 1254912, at *4 (N.D. Ill. Mar. 19, 2019). The parties do not dispute that a contract existed between them but rather whether the contract included specific promises about on-campus, in-person instruction and services. *See id.* ("Whether a specific provision of the contract applies is not the relevant question. The relevant question is whether the parties' relationship is governed by a contract."). "Where plaintiffs have acknowledged that there is an express contract, courts have prevented plaintiffs from pursuing an unjust enrichment claim, even in the alternative." *Id.* Because Buschauer acknowledges the existence of a contract with Columbia, the Court finds it appropriate to dismiss Buschauer's unjust enrichment claim as well. *See Oyoque*, 2021 WL 679231, at *5 ("[W]hen the unjust enrichment claim is premised on a failure to fulfill contractual terms—which is the case here—this general rule [allowing pleading in the alternative] does not apply, and dismissal of the unjust enrichment claim is appropriate.").

## CONCLUSION

For the foregoing reasons, the Court grants Columbia's motion to dismiss [25]. The Court dismisses the first amended complaint without prejudice.

Dated: April 6, 2021

                                                                         SARA L. ELLIS
                                                                         United States District Judge