**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID BUSCHAUER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 20 C 3394 |
| v. | ) ) | |
| | ) | Judge Sara L. Ellis |
| COLUMBIA COLLEGE CHICAGO, | ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

In light of the COVID-19 pandemic, in March 2020, Defendant Columbia College Chicago ("Columbia") shifted its classes online and closed its campus for the remainder of the spring 2020 semester. Unhappy with this change and believing that it negatively affected the value of his education, Plaintiff David Buschauer, a Columbia undergraduate student, filed this putative class action on behalf of himself and all Columbia undergraduate and graduate students. The Court dismissed his first amended complaint, finding that Buschauer had not sufficiently alleged that Columbia made any specific promise of on-campus, in-person instruction or services to allow him to proceed on a breach of contract claim and that the existence of a contract governing the parties' relationship foreclosed Buschauer's unjust enrichment claim. Doc. 52. Buschauer has now filed a second amended complaint ("SAC"), seeking a refund of a portion of the technology, activity, and health center fees he paid for the spring 2020 semester during which he did not receive any services funded by the fees under a theory of unjust enrichment. Columbia has moved to dismiss the SAC. Because Buschauer cannot avoid the fact that a contract continues to govern his relationship with Columbia, the existence of that contract bars his unjust enrichment claim and requires the Court to dismiss the SAC with prejudice.

## BACKGROUND[1]

Columbia, a private, nonprofit college with almost 7,000 students in over sixty undergraduate and graduate programs, offers a curriculum that blends creative and media arts, liberal arts, and business. Columbia offers classes in fifteen-week fall and spring semesters. In marketing the spring 2020 semester, Columbia indicated that classes would occur from January 27 through May 15, 2020, with a one-week spring break from March 30 to April 4. Columbia noted, however, that "while the usual term of a class is 15 weeks, some subjects may be offered in shorter periods, ranging from three to eight weeks." Doc. 54 ¶ 13.

Buschauer, a resident of Lemont, Illinois, attended Columbia for the spring 2020 semester as a full-time undergraduate student. Buschauer anticipated graduating in May 2021 with a degree in entertainment marketing and music business.[2] For the spring 2020 semester, Columbia charged him several mandatory fees. Specifically, Buschauer paid a $45 health center fee, which funded health services for students; a $75 activity fee, which funded student events and activities; and a $150 technology fee, which funded computer labs, software, on-campus internet access, and student technology support. In addition to funding clubs and special events, the activity fee also provided access to Columbia's on-campus student center, which housed a maker space, a fitness center, a career center, workspaces, meeting rooms, game rooms, and music practice rooms.

Partway through the spring 2020 semester, due to the COVID-19 pandemic, Columbia suspended all on-campus, in-person classroom instruction, as well as access to on-campus facilities and services, from March 12 to April 6, 2020. During this period, Columbia did not

---

[1] The Court takes the facts in the background section from the SAC and presumes them to be true for the purpose of resolving Columbia's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

[2] Buschauer dropped out of Columbia on September 19, 2020 due to the continuation of online classes.

provide any services, facilities, or technologies funded by the health center, activity, and technology fees.

In addition to the tuition and fees students paid for the spring 2020 semester, Columbia also received $6,341,542 in grant funding from the CARES Act–HEERF, up to 50% of which Columbia could use to cover costs associated with significant changes to the delivery of instruction due to COVID-19. Columbia did not refund or provide any reimbursement for the health center, activity, and technology fees students paid for the spring 2020 semester.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.     Unjust Enrichment as a Standalone Claim

First, Columbia argues that Buschauer cannot pursue a standalone claim for unjust enrichment. "Illinois law is arguably somewhat confused on whether a claim of unjust

enrichment requires an underlying tort or breach of contract or whether, instead, there can be a free-standing claim based on the proposition that it would be unjust for the defendant to retain a benefit that it obtained at the plaintiff's expense." *Stevens v. Interactive Fin. Advisors, Inc.*, No. 11 C 2223, 2015 WL 791384, at *16 (N.D. Ill. Feb. 24, 2015); *see also* Mason W. Kienzle & Samuel M. Zuidema, *Unjust Enrichment in Illinois: Uncommon Confusion over a Common Claim*, 2020 U. Ill. L. Rev. Online 53 (analyzing cases addressing unjust enrichment under Illinois law and noting that "[a]s things now stand, it is no exaggeration to say that parties litigating in certain Illinois and federal courts have no idea whether a claim for unjust enrichment can stand independently--and neither, apparently, do the judges"). Columbia relies on an Illinois Appellate Court case, *Martis v. Grinnell Mutual Reinsurance Co.*, which held that "unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." 388 Ill. App. 3d 1017, 1024 (2009). Instead, according to *Martis*, unjust enrichment "is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." *Id.* (quoting *All. Acceptance Co. v. Yale Ins. Agency*, 271 Ill. App. 3d 483, 492 (1995)). On the other hand, Buschauer argues that, in *Cleary v. Philip Morris, Inc.*, the Seventh Circuit suggested that unjust enrichment may proceed as an independent cause of action because "the Illinois Supreme Court has articulated the elements of unjust enrichment without reference to a separate underlying claim in tort, contract, or statute." 656 F.3d 511, 516 (7th Cir. 2011) (citing *Raintree Homes, Inc. v. Vill. of Long Grove*, 209 Ill. 2d 248, 258 (2004)). But the *Cleary* court refused to "resolve definitively whether Illinois law recognizes unjust enrichment as an independent cause of action." *Id.* at 518. Without addressing *Cleary*'s prediction that the Illinois Supreme Court would recognize unjust enrichment as a separate cause of action,

subsequent Seventh Circuit cases have disagreed with *Cleary* and aligned with *Martis*, concluding that unjust enrichment may not proceed as a separate claim. *See Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, --- F.4th ----, 2021 WL 5833488, at *7 (7th Cir. 2021); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739–40 (7th Cir. 2019).

The Court need not resolve the issue here because, as Buschauer notes in his response, he predicates his unjust enrichment claim on the existence of a quasi-contract. A quasi-contract, also referred to as a contract implied in law, "is a duty imposed to prevent injustice when there is no actual agreement between the parties." *Callahan v. H.E. Wisdom & Sons, Inc.*, No. 20 C 2852, 2021 WL 4552553, at *2 (N.D. Ill. Oct. 5, 2021). Thus, even if unjust enrichment cannot survive as a standalone claim, Buschauer argues that he may proceed because he bases the claim on a quasi-contract. Because a plaintiff need not specifically plead legal theories in federal court and the SAC sufficiently provides notice to Columbia of a quasi-contractual theory, the Court does not find it necessary to dismiss the SAC because it only specifically references an unjust enrichment claim. *See Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). The Court thus turns to Columbia's argument that Buschauer has not sufficiently stated an unjust enrichment claim predicated on a quasi-contractual theory.

## II.    Sufficiency of the Allegations

To state an unjust enrichment claim, Buschauer must allege that Columbia has "unjustly retained a benefit to [Buschauer's] detriment, and that [Columbia's] retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs. v. Mt. Vernon Hosp.*, 131 Ill. 2d 145, 160 (1989). Among other arguments, Columbia contends that Buschauer cannot proceed on an unjust enrichment claim based on quasi-contract

because an express contract governs the parties' relationship concerning the payment of fees.

*See People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 497 (1992) ("Because unjust

enrichment is based on an implied contract, 'where there is a specific contract which governs the

relationship of the parties, the doctrine of unjust enrichment has no application.'" (citation

omitted)). Buschauer contends that the Court cannot consider his prior allegations concerning

the existence of a Financial Responsibility Agreement ("FRA") because the SAC supersedes his

prior pleadings. While that generally is the case, because his amended allegations "flatly

contradict the originals, and there is no suggestion that the originals were made in error," the

Court may consider the FRA and his prior concession that the FRA governed the parties'

relationship "in the interest of justice." *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*, No. 18

CV 839, 2019 WL 5963633, at *12 (N.D. Ill. Nov. 13, 2019). Here, it appears that Buschauer

intentionally omitted any reference to the FRA to avoid the Court's prior ruling on whether his

unjust enrichment claim can go forward, Doc. 52 at 13, yet he does not dispute that he agreed to

the FRA and instead sets forth reasons why the FRA does not bar his unjust enrichment claim,

Doc. 68 at 4–7. Thus, the Court considers it here.

The FRA, which Columbia students sign at the start of each semester, indicates that

students "accept full responsibility to pay all tuition, fees, housing charges, meal plan charges,

and other associated costs assessed as a result of [their] registration and/or receipt of services."

Doc. 66 at 10. Under the heading "Changes to Curriculum," students agree "that changes made

to the curriculum do not absolve [them] of [their] financial responsibility to pay the correct

amount of tuition, fees, and other associated financial obligations assessed as a result of [their]

registration and/or services received at" Columbia. *Id.* at 11. Finally, as relevant here, the FRA

provides that it "supersedes all prior understandings, representations, negotiations and

correspondence between the student and Columbia College Chicago, constitutes the entire Agreement between the parties with respect to the matters described, and shall not be modified or affected by any course of dealing or course of performance." *Id.* at 13.

Buschauer argues that, even treating the FRA as an express contract between the parties, it does not address the specific subject matter he raises in his unjust enrichment claim, namely, the services Columbia agreed to provide Buschauer in exchange for payment of the health center, activity, and technology fees. But "Illinois courts look to the subject matter of the contract, rather than the contract's specific terms or any provisions related to the claim, and they interpret the contract's subject matter broadly." *Callahan*, 2021 WL 4552553, at *2. As the Court previously noted, "[t]he relevant question is whether the parties' relationship is governed by a contract," not "[w]hether a specific provision of the contract applies." *Miszczyszyn v. JPMorgan Chase Bank, N.A.*, No. 18-cv-3633, 2019 WL 1254912, at *4 (N.D. Ill. Mar. 19, 2019). Here, the FRA expressly governs the financial relationship between Columbia and Buschauer. Therefore, it bars Buschauer's claim seeking a prorated refund of the health center, activity, and technology fees for the three weeks during which Columbia allegedly did not provide any services to its students. *See Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 689 (7th Cir. 2004) ("Utility Audit is correct that its contract with Horace Mann contains no terms or provisions dealing specifically with soliciting cheaper proposals for telephone service. But despite the absence of specific terms, the subject matter of the contract clearly encompasses the work it did for Horace Mann identifying sources of savings including potential 'future savings.' Therefore we agree with the district court that the contract governs Utility Audit's proposed claim that it is entitled to a share of Horace Mann's savings."); *Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 104 Ill. App. 3d 357, 361 (1982) ("Plaintiff asserts its complaint states a

valid cause of action in quasi-contract despite the existence of a contract because the contract does not cover the specific service plaintiff rendered-the development of the design changes. It is perhaps true that the contract did not expressly cover the design changes, but it does not follow that an action in quasi-contract is therefore allowable. If a quasi-contract action could be brought every time a party under contract performs a service not precisely covered by the contract, then the rule preventing quasi-contract actions when a contract exists would have little meaning."). And because Buschauer has had several opportunities to state a valid claim and further amendment would be futile, the Court dismisses the SAC with prejudice. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 734–35 (7th Cir. 2014) (affirming dismissal with prejudice of first amended complaint after initial complaint was dismissed without prejudice); *Pirelli Armstrong Tire Corp., Retiree Med. Benefits Tr. v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *1 (N.D. Ill. Feb. 18, 2010) (dismissing amended complaint with prejudice after previous dismissal of ICFA and unjust enrichment claims without prejudice), *aff'd*, 631 F.3d 436 (7th Cir. 2011).

## CONCLUSION

For the foregoing reasons, the Court grants Columbia's motion to dismiss [58]. The Court dismisses the SAC with prejudice and terminates this case.

Dated: January 10, 2022

_____
SARA L. ELLIS
United States District Judge